**MICHAEL L. SPIEGEL**
11 BROADWAY, SUITE 1305
NEW YORK, NEW YORK 10006
TEL:(212)587-8558    FAX:(212)571-7767

February 4, 2009

**MEMO ENDORSED**

FEB 05 2009

CHAMBERS OF
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/25/09

**BY HAND**
Hon. James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Room 1960
New York, NY 10007-1312

Re:  Eastwood, et al. v. The City of New York, et al., 05 Civ. 9483 (RJS) (JCF)

Dear Judge Francis:

I am plaintiffs' counsel in this RNC Consolidated Case. I write to object to defendants' recent notice of four previously undisclosed witnesses whom they wish to rely upon at trial, and to move to preclude them from being used for any purpose in this litigation pursuant to F.R.Civ.P. 37. Plaintiffs also move to preclude certain other witnesses who have been named during discovery, but who have not been listed as trial witnesses. Finally, plaintiffs request that Your Honor set an expert discovery schedule.

The Facts and Posture of the Case

The five plaintiffs in this case allege that they were wrongfully arrested during an incident on August 31, 2004 shortly after 10:00 p.m. Three of the plaintiffs were participating in a sidewalk demonstration which originated in the Times Square area, and then proceeded north on the east sidewalk of Broadway. As the group of protesters approached the corner of 49th Street and Broadway, plaintiff Corey Eastwood was pepper sprayed and arrested outside the Noche restaurant, where a Republican Party event was taking place. The four other plaintiffs were arrested on the opposite side of Broadway approximately ten minutes after Eastwood was arrested. This is not a "mass arrest" case.

Fact discovery is over.[1] Four videotapes of the incident were produced during discovery, and fourteen depositions have been taken. Although plaintiffs do not anticipate offering expert testimony on their direct case, Assistant Corporation Counsel Curt Beck has informed me that defendants wish to offer experts. Therefore, plaintiffs request that the Court set an expert

---

[1] The continued depositions of plaintiffs concerning old arrest records have been postponed at defendants' request, and will be completed during March and the first week in April. They are not at issue in this application.

1

disclosure schedule. The case is now in the same posture as Schiller and Dinler. Other than expert discovery, plaintiffs are awaiting resolution of the Intelligence Division document litigation pending before Judge Sullivan, and the depositions of the high-ranking NYPD officials which will follow. At that point, the parties will be in a position to litigate dispositive motions and then proceed to trial.

The Four Recently-Noticed Witnesses

On January 15, 2009, plaintiffs conducted the deposition of Mr. Lou Palumbo, a non-party witness offered by defendants.[2] While viewing videotapes of the incident during the deposition, Palumbo identified four men. Shortly after the deposition, Mr. Beck notified me that defendants wished to list the four men as trial witnesses, and he confirmed that notice on January 30, 2009 (see the January 30, 2009 e-mail from Mr. Beck, attached as Exhibit A). Defendants' notice of trial witnesses is long past the April 4, 2008 deadline for such notice. Plaintiffs object to it, and request that the Court bar defendants from using the witnesses for any purpose in this litigation pursuant to F.R.Civ.P. 37.

The witnesses certainly could have been identified by defendants in compliance with this Court's discovery orders. All of them are depicted in the videotapes of the incident. Three of the four newly-named witnesses are police officers Lance Trent, Billy Donahue and Steve Giacco, who were Community Affairs officers at the Midtown North Precinct. Giacco was Deputy Chief Steven Anger's driver the evening of the incident; Chief Anger is Executive Officer of Patrol Bureau Manhattan South, and was deposed on December 10, 2008, without mentioning officer Giacco (although he testified that he had viewed the videotapes with Mr. Beck). Eight police witnesses for defendants have been deposed, many of whom could undoubtedly have identified the officers. Clearly, defendants' did not make reasonable inquiries to identify the three newly-named police officers.

NYPD officers are party witnesses. (*See* Schiller v. City of New York, 04 Civ. 7922 (RJS)(JCF), October 9, 2008 Memorandum and Order at p. 10.) Therefore, they should have been identified by June 29, 2007, pursuant to this Court's June 15, 2007, Order (attached as Exhibit B). Defendants have offered no explanation why they could not have identified these three party witnesses during the party discovery period, *i.e.*, before June 29, 2007, or listed them as trial witnesses by April 4, 2008.

The fourth newly-named witness was one of Mr. Palumbo's employees the evening of the incident. Mr. Palumbo, who owns a private security firm, Elite Agency, had been retained to

---

[2]Although defendants had initially noticed the depositions of Palumbo and several other non-party witnesses, it subsequently became apparent that they intended to rely upon the witnesses, not depose them. On October 30, 2008, Mr. Beck provided me with the witnesses' addresses, and plaintiffs served subpoenas on October 31, 2008. Thereafter, the depositions were scheduled at the parties' convenience, concluding with Palumbo's.

2

provide security for the Republican Party event at the restaurant. He is without doubt the most prominent figure in the videotapes of the incident. At one point he physically confronts one of the demonstrators, a woman, who falls to the ground and is treated by medics. He is then depicted getting into an angry exchange with a bystander, admonishing her that she may be violating child endangerment laws by having her small child in the vicinity of the incident. At another point he grabs a plainclothes officer around the neck from behind in the apparent belief that the officer is a civilian interfering with uniformed police.

It is not clear when defendants actually knew Mr. Palumbo's name and contact information; they were certainly on notice of his role in the incident from the time they received the videotapes from plaintiffs on November 15, 2006. The City identified Palumbo to plaintiffs on May 16, 2008 (see attached May 16, 2008, letter, Exhibit E, at p. 7). Defendants may have known his identity long before that, and certainly *could* have known his identity long before that, since Palumbo was well-known to many NYPD personnel at the scene. He testified that he was a long-time friend of Chiefs Anger, Esposito and Fox, all of whom were present at the incident (retired Chiefs Esposito and Fox were working for him that evening). The City was able to identify Mr. Palumbo, which plaintiffs were unable to do.[3] It was Mr. Beck who contacted Palumbo and obtained his consent for plaintiffs to serve a deposition subpoena upon him at his mailing address; Mr. Beck spoke with Palumbo to arrange the date and time he would appear for his deposition; and Mr. Beck met with Palumbo before the deposition. Once Palumbo was identified – which surely could have taken place long before the close of discovery – he could have been shown the videotapes and identified the employee he mentioned during his deposition.

It is clear that defendants did not make a reasonable effort to identify the four witnesses, and that they seek to extend discovery simply because the names surfaced during Palumbo's deposition. Defendants have ignored this Court's explicit deadlines, made no effort to conduct a reasonable investigation to ascertain the identities of additional witnesses, and now seek to offer witnesses whom plaintiffs would have to depose four and a half years after the incident.

Finally, the witnesses are cumulative and the probative value of their testimony has been diminished by the passage of time. There are four videotapes of the events, and there have been depositions of fourteen witnesses, including nine defendants' witnesses, concerning a relatively limited incident which took place in open view. The defendants have not made a proffer concerning the testimony from the newly-named witnesses, but the testimony could not concern any aspect of the case which has not already been explored.

It is undisputed that the deadline for listing trial witnesses was April 4, 2008, ten months ago. In Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006), the district court precluded trial witnesses tardily identified by a defendant. On review, the Court of Appeals stated,

---

[3]Plaintiffs directed subpoenas to the owner of Noche and the two sponsors of the event, the New York State Republican Party and the American Gas Association, in an effort to identify Mr. Palumbo, without success.

3

This Court reviews the district court's exclusion of testimony under Rule 37(c)(1) for abuse of discretion. *See* Softel, Inc. v. Dragon Med. & Scientific Commun's, Inc., 118 F.3d 955, 961 (2d Cir. 1997). In determining whether the district court acted within its discretion, this Court considers "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Id.

Id. at 117. Defendants fail to satisfy these factors. They could have learned of the witnesses through ordinary investigation before the April 4, 2008 trial witness deadline, which was more than two and a half years after this case was filed. The four witnesses' testimony cannot be deemed "important" when it concerns an event witnessed by dozens of police witnesses and captured on four videotapes. The prejudice to plaintiffs arises from the passage of time, the possibility that testimony could be "tailored" to conform to previous accounts given by defendants' witnesses, and the expenditure of time and money required to investigate and depose any new witnesses. Finally, further fact discovery will delay any discovery concerning experts the City intends to offer.

Witnesses Listed in Defendants' May 16, 2008 Letter

By a May 16, 2008 letter captioned "Re: Consolidated RNC Cases," ("the letter") defendants transmitted a list of persons whom they described as having "knowledge of events" at various locations. (The May 16, 2008 letter is attached as Exhibit E.)

On pages 6-7 of the letter, twelve persons are listed under the caption "August 31, 2004, vicinity of 49th Street & Broadway." Of these, four are the named individual defendants, and five others have been deposed. Three witnesses listed in the letter (Lt. John McAndrew, Sgt. Luigi Pagano, and Deputy Chief Michael Esposito) have not been deposed, and no proffer has ever been made describing what information they may possess concerning the incident. Nor have defendants listed them as trial witnesses. Plaintiffs now move to preclude them from use for any purpose in this litigation pursuant to F.R.Civ.P. 37. (*See* Schiller v. City of New York, 04 Civ. 7922 (RJS)(JCF), October 9, 2008 Memorandum and Order concerning a similar May 16, 2008 letter from defendants.)

The "Deputy Chief Michael Esposito" listed in the letter is one of the retired Chiefs who worked for Mr. Palumbo the night of the incident. On January 8, 2009, Mr. Beck and I called him at his home in Florida. During that conference call, Esposito stated that he did not recall the event at Noche, nor did he recall that there was a demonstration at which people were arrested. When retired Chief Fox, who was also working for Palumbo that evening, called Esposito recently and discussed the Noche incident with him, Esposito recalled that a woman had fallen at a street corner, but he did not see it happen. He remembered nothing else. When I told Esposito that Capt. Thomas Kavanagh was present at the incident and had pepper sprayed a demonstrator

4

and ordered his arrest (which is not in dispute), Esposito stated that his recollection was not refreshed, and that he did not recall Kavanagh being at the incident, even though he knew Kavanagh, who had been under his command while Esposito was with the NYPD. Esposito concluded by stating that "while with the NYPD, I was at thousands of demonstrations, and they all mingle together in my mind."

In light of Esposito's statements during that call, and the fact that he was not listed as a trial witness in defendants' April 4, 2008 disclosure, plaintiffs have requested a stipulation from defendants that they will not offer him for any purpose. Defendants have not responded. In lieu of such a stipulation, plaintiffs move to preclude Esposito from being used for any purpose in this litigation pursuant to Rule 37. With regard to the Softel factors, Esposito has no important testimony, and plaintiffs would be prejudiced by having to depose a witness who resides in Florida, with the concomitant time and expense involved, to simply secure sworn testimony that he does not recall the event.

The Unidentified NYPD Officer Who Took Custody of Plaintiff Eastwood at the Scene

On January 10, 2008 plaintiffs moved to preclude defendants from offering any testimony concerning an unidentified officer who took custody of plaintiff Eastwood at the scene, transported plaintiff to a precinct, and removed a contact lens from plaintiff's eye. That application was "denied as premature" in a Memo Endorsed Order dated January 22, 2008 (attached as Exhibit F).

Plaintiffs' January 10, 2008 application stated:

> Plaintiffs originally requested the officer's identity in Plaintiffs' First Set of Interrogatories and Requests for Production of Documents, served on February 17, 2006, and have repeatedly requested that he be identified and produced for deposition, and that documents be produced concerning his interactions with plaintiff Eastwood. Not only has the officer not been identified, the City has not produced any documents concerning the officer's interactions with plaintiff. Nor has there been any testimony from any other witness concerning the interactions between plaintiff Eastwood and the unidentified officer.
>
> Plaintiffs now move to preclude the defendants from offering any testimony from any witness concerning the interactions between plaintiff Eastwood and the unidentified officer.
>
> Plaintiffs further move to preclude defendants from offering into evidence, or using in any way, any documentary evidence concerning the interactions between plaintiff Eastwood and the unidentified officer, or concerning the activities of the unidentified officer during the time he was in the presence of plaintiff Eastwood.

5

Exhibit F, at p. 2. Over a year has passed since the Memo Endorsed Order, and despite being put on notice by plaintiffs' January 2008 application, defendants have not identified the officer. None of the witnesses who have been deposed over the past year have identified the officer or given any testimony concerning his interactions with Eastwood, nor has any documentary evidence been produced relating to his interactions with plaintiff Eastwood. Plaintiffs now renew their application to preclude defendants from offering the unidentified officer as a witness, or offering any testimonial or documentary evidence concerning the officer's interactions with plaintiff Eastwood.

Respectfully submitted,

M. Spiegel

Michael L. Spiegel

MLS:ms

cc: Curt P. Beck, Esq. (by hand)
Special Assistant Corporation Counsel

2/25/09

Application granted with respect to witnesses Trent, Donahue, and Ciacco, substantially for the reasons set forth in my October 9, 2008 Memorandum and Order. Defendants have not demonstrated that they made reasonable efforts to identify police personnel on the scene. Application denied with respect to witness Hampton, who could not reasonably have been identified prior to Palumbo's deposition. With respect to witnesses listed in the May 16, 2008 letter, defendants shall provide documentation by March 15, 2009 showing when they first identified these witnesses to plaintiffs' counsel. Application denied with respect to the unidentified officer as still premature.

SO ORDERED

James C. Francis IV
USMJ