UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x


RNC CONSOLIDATED CASES (RJS) (JCF)


-----------------------------------------------------------------x


DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO RECONSIDER IN PART THE ORDER
OF FEBRUARY 26, 2009 AFFIRMING JUDGE FRANCIS' ORDER GRANTING
PLAINTIFFS' MOTIONS TO AMEND COMPLAINTS IN 37 ACTIONS


MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorneys For Defendants*

James Mirro
Raju Sundaran
Special Federal Litigation
100 Church Street, Room 3-130
New York, New York 10007
212.788.8026 (ph)
212.788.9776 (fax)


March 12, 2009

### TABLE OF CONTENTS

Preliminary Statement ................................................................................. 1

Argument ...................................................................................................... 3

I.      Binding Authorities Require The Court To Conduct A Thorough
        Review Of The Merits Of The Underlying Dispute ............................…........... 3

II.     The Court Overlooked The Language Of The Proposed Amended
        Complaints Submitted For Approval And Overlooked Binding Legal
        Authorities Requiring A Finding That Those Amendments Are Futile ................. 4

     A.   The Cases Cited In The Order Do Not Support The Claim Approved
          By The Magistrate Judge Against Cohen And That Novel Claim Is Not
          Supported By Any Other Legal Authority Known To Defendants ....................…... 5

     B.   Judge Francis *Did Not* Disagree With Defendants
          "That The Record Did Not Support A Claim That
          Commissioner Cohen Misrepresented Intelligence Data"...............…................. 6

     C.   The Proposed Amended Pleadings Do Not Contain Any Facts Supporting
          Essential Elements Of A Section 1983 Claim, Including Facts Relating
          To Cohen's Personal Involvement, And Do Not Contain Facts Supporting
          The Specific Claim That The Magistrate Judge Approved Against Cohen .............. 10

     D.   The Claim Approved By The Magistrate Judge Against Cohen – That Cohen
          Manipulated Information He Presented To The Relevant Policymakers –
          Is Legally Deficient Under Rule 8 Of The Federal Rules Because It Does Not
          Provide Any Notice To Cohen Of What Specific Misrepresentation He Made To,
          Or What Specific Information He Purposely Withheld From, Any Policymaker ... 12

     E.   The Magistrate Judge's Approval Of The Claims Against Cohen On The
          Basis Of Arguments Of Plaintiffs' Counsel In Memoranda Of Law, Reply
          Memoranda, Declarations, News Articles And Other Information
          Outside The Pleadings – And Not Pled Within The Pleadings –
          Is Plainly Contrary To Law ......................................…............................... 14

     F.   The Magistrate Judge's Holding That "[O]nly Some Of The Plaintiffs'
          Proposed Amended Complaints Contain Specific Allegations
          Regarding Cohen's Misrepresentation Of Intelligence Data" (Order At n.6),
          Which Does Not Cite Any Complaint That Actually *Does* Contain
          Such Allegations, Confirms Defendants' Argument That
          Plaintiffs' Claims Are Legally Defective .....................…................................. 14

     G.   The Magistrate Judge's Decision To Approve The Claims Against Cohen On An
          "All Or None" Basis, Without Regard To The Actual Allegations Contained
          (Or Not Contained) In Particular Complaints, Was Clearly Erroneous ….............. 16

     H.   The Policies Of Which Plaintiffs Complain, Which Are An Essential Link
          In Plaintiffs' Theory Against Cohen, Are Constitutional As
          A Matter Of Law Under Existing Legal Precedents And, Therefore,
          Do Not Support Any Claim Of Liability Against Cohen ................................... 16

     I.   Cohen Is Entitled To Qualified Immunity ...................................…............... 19

Conclusion ............................................................................................…......... 25

## PRELIMINARY STATEMENT

The Court's order of February 26, 2009 ("2/26/09 Order") affirmed the order of Magistrate Judge Francis dated January 23, 2008 ("1/23/08 Order") that approved the filing of proposed amended complaints in approximately 37 RNC cases.[1]   Among other proposed amendments that were approved by Judge Francis were amendments adding claims against David Cohen, the NYPD's Deputy Commissioner of Intelligence in approximately 27 cases.  In their appeal to Your Honor, defendants documented numerous errors committed by Judge Francis in his underlying order approving the amendments, but none as serious as the errors that led to Judge Francis' decision to approve the amendments adding claims against Commissioner Cohen.  Defendants now seek reconsideration of Your Honor's order affirming Judge Francis' order because *there is no basis in law or in fact* for Commissioner Cohen to be named as a defendant in any of these cases.  The claims against Cohen *are not analogous* to malicious prosecution claims against ordinary police officers – and they are not analogous to any other constitutional claim recognized by the courts to date.  They are, in fact, unprecedented in the law. In addition, contrary to Your Honor's apparent understanding, Judge Francis *did not identify any basis* in the record of these cases to support a misrepresentation claim against Commissioner Cohen.  There is nothing in the intelligence documents that are the subject of the pending Rule 72(a) objection that undermines or contradicts Commissioner Cohen's conclusions.  Nor have

---

[1] In this brief, the Court's underlying orders will be referred to by their dates: the January 23, 2008 order of Judge Francis ("1/23/08 Order"); and the February 26, 2009 order of Your Honor ("2/26/09 Order").   Likewise, defendants' underlying briefs will be referred to by the dates shown on their cover pages: the February 25, 2008 Appeal Brief ("2/25/08 Brief"); and the April 10, 2008 Reply Brief ("4/10/08 Brief").

plaintiffs' pleadings *identified any specific facts* that plaintiffs claim to have been manipulated by Commissioner Cohen.

Defendants' primary argument to Judge Francis was that the claims against Commissioner Cohen were *futile* as pled.  Nevertheless, in reaching his decision in the numerous cases at issue, Judge Francis *erroneously overlooked* (among other things) the actual language of the proposed complaints in which the claims against Commissioner Cohen are pled; overlooked factual material from the intelligence documents that are part of the record of these cases, that was before Judge Francis, and that demonstrated that plaintiffs' allegations could only have been made in bad faith; *erroneously considered* material outside the pleadings that were submitted by plaintiffs *post-hoc* to bolster their defective pleadings; and *failed to apply or misapplied* applicable law that plainly establishes the futility of the proposed claims.  Defendants submit that, in the Court's 2/26/09 Order affirming Judge Francis' opinion, the Court misapplied those same legal principles to the extent that they are discussed; and inasmuch as many of defendants' arguments and the legal authorities on which they are based are neither discussed nor acknowledged, the Court appears to have overlooked them entirely.

Defendants now seek reconsideration with respect to the claims against Commissioner Cohen including his entitlement to qualified immunity on those claims. Defendants are compelled to do so here for several reasons: because this issue is of vital importance to the City; because the claims asserted against Commissioner Cohen are extremely serious, are not made in good faith and, in fact, are a wholesale distortion of the truth; because it is evident that Judge Francis' order and Your Honor's Order are clearly erroneous and contrary to law; because the plaintiffs' unprecedented and transparently meritless claims against Cohen are precisely the type of claims as to which the qualified immunity defense should apply at the

earliest possible point in the litigation; and because defendants wish to provide the Court an opportunity to review and correct its decision before further proceedings.

## ARGUMENT

### I.
### Binding Authorities Require The Court To Conduct
### A Thorough Review Of The Merits Of The Underlying Dispute

On this motion, the Court should conduct a thorough review of "the matters or controlling decisions which counsel believes the court has overlooked." Local Civil Rule 6.3. To do so, the Court must assess the merits of defendants' arguments. On appeal of orders from reconsideration motions, the Second Circuit has assessed very closely whether the lower courts were faithful both to the reconsideration standard and to the applicable substantive law. Thus, in Schrader v. CSX Transportation, Inc., 70 F.3d 255 (2d Cir. 1995), the Second Circuit held that reconsideration is appropriate where the moving party points to "controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. at 257 (emphasis added). The Second Circuit affirmed the lower court's decision to grant reconsideration where defendant identified legislative history "not discussed in [the lower court's] original ruling" and case law not "originally examined" by the lower court. Id. at 257-58 (emphasis added). The Second Circuit carefully assessed the lower court's decision on the merits before reaching its decision. Id.[2]

Likewise, on review of orders denying reconsideration, the Second Circuit consistently has assessed the legal merits of the parties' arguments and the lower courts' original

---

[2] Reconsideration also is proper to avoid clear error and manifest injustice. See Pichardo v. Ashcroft, et al., 374 F.3d 46, 55-56 (2d Cir. 2004) (recognizing that, absent reconsideration, "manifest injustice [would] occur" where the lower court applied the wrong legal standard).

decisions. In re Harris, 464 F.3d 263, 272-73 (2d Cir. 2006) (vacating judgment for abuse of discretion for failure to apply applicable law); Pichardo v. Ashcroft, et al., 374 F.3d 46, 55-56 (2d Cir. 2004) (vacating judgment for abuse of discretion and to avoid "manifest injustice" for failure to consider applicable law); RJE Corporation v. Northville Industries Corporation, 329 F.3d 310, 313-16 (2d Cir. 2003) (affirming after engaging in detailed analysis of contract provisions at issue); Lowrance v. Achtyl, 20 F.3d 529, 534-37 (2d Cir. 1994) (affirming after engaging in detailed review of magistrate's reasoning); see also Davidson v. Chestnut, 193 F.3d 144, 149 (2d Cir. 1999) (vacating order and remanding to district court for reconsideration where "it is unclear whether the district court considered" the defendants' arguments).[3]

## II.
### The Court Overlooked The Language Of The Proposed Amended Complaints Submitted For Approval And Overlooked Binding Legal Authorities Requiring A Finding That Those Amendments Are Futile

In the Court's 2/26/09 Order, the Court failed to examine, to discuss or to acknowledge, and therefore overlooked as a legal matter, many of the arguments that defendants carefully documented in their 2/25/08 and 4/10/08 Briefs. Schrader v. CSX Transportation, Inc., 70 F.3d 255, 257-58 (2d Cir. 1995) (matters not "discussed" or "examined" in order were "overlooked" and reconsideration was warranted). With respect to those arguments considered by the Court in the 2/26/09 Order, defendants emphasize that the Court failed to examine or to discuss the actual language of *any of the 27 complaints* erroneously approved by Judge Francis

---

[3] See also Martens, et al. v. Smith Barney, Inc., et al., 131 Fed. Appx. 329, 330 (2d Cir. 2005) (discussing "provisions of the settlement stipulation" on which decision turned); Yobo v. New York State, et al., 13 Fed. Appx. 41, 43-44 (2d Cir. 2001) (interpreting requirements of Title VII); Black, et al. v. Diamond, et al., 163 Fed. Appx. 58, 61 (2d Cir. 2006) (considering merits of argument on reconsideration); Brooks v. Von Lenthe, et al., 207 Fed. Appx. 85 (2d Cir. 2006) (same); O'Connor v. Pan Am Corporation, 5 Fed. Appx. 48, 51-52 (2d Cir. 2001) (same).

and subject to this appeal.   In addition, the Court failed to examine or to discuss the legal authorities that demonstrate that the language of those complaints fails to state a claim against Commissioner Cohen.   In other instances, particularly with respect to the Court's analysis of Commissioner Cohen's entitlement to qualified immunity, defendants respectfully submit that Judge Francis' opinion and the Court's 2/26/09 Order each are clearly erroneous and contrary to law because the Court misapplied the law as set forth in defendants' briefing.   Defendants refer the Court to defendants' prior briefs and highlight here the main points and authorities overlooked by the Court that demonstrate that the claims against Commissioner Cohen are fatally defective as a matter of law.

### A. The Cases Cited In The Order Do Not Support The Claim Approved By The Magistrate Judge Against Cohen And That Novel Claim Is <u>Not Supported By Any Other Legal Authority Known To Defendants</u>

The Court overlooked defendants' argument that Judge Francis had improperly permitted an unprecedented and novel claim against Cohen to go forward by erroneously analogizing it to a "malicious prosecution" claim and citing legal authorities that are entirely inapposite to the facts of this case.   Defendants distinguished each and every case cited by Judge Francis on substantial grounds (2/25/08 Brief at 20-21).   Defendants alerted the Court that:

> These cases are very far afield from the sphere in which Cohen acted.  Cohen is and was at the time of the RNC a high-level <u>civilian</u> executive within the NYPD (not a police officer).  Cohen did not arrest any of the plaintiffs.  He did not order any of their arrests. He did not initiate any of their prosecutions.  He did not forward any information to a prosecutor in connection with any of them.   He did not create any evidence for submission to a jury in any of their criminal cases.  Unlike sworn police officers, he did not have the legal authority to do so.  None of the complaints, moreover, allege that he did -- nor could they consistent with Rule 11.  In short, <u>Caraballo</u>, <u>Mitchell</u>, <u>Ricciuti</u> and <u>Brome</u> are not authority for any colorable claim against Cohen.  Instead, the theory of liability set forth in the Order appears to be entirely novel.

2/25/08 Brief at 20-21.  In addition, a claim for "malicious prosecution" requires some showing of "malice" or "conscious falsity."  See <u>Jenkins v. The City of New York, et al.</u>, 1992 U.S. Dist.

LEXIS 8279, * 17-18 (S.D.N.Y. 1992) (Carter, J.) ("[t]he malice element [] requires a showing that the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive' [or] 'awareness of 'conscious falsity'"). Here, plaintiffs have alleged neither malice nor conscious falsity with the requisite specificity to make such claims against Cohen plausible (see discussion in Sections C-D below). Nevertheless, the Court erroneously affirmed Judge Francis' decision on the basis that "Judge Francis noted that courts have found liability in analogous situations" without examining defendants' arguments as to why those cases are inapposite.

Defendants emphasize that the Court is not *required* to approve claims merely because the plaintiffs assert them in a complaint. The Supreme Court and the Second Circuit repeatedly have refused to create causes of action that do not exist and rejected claims that are not supported by legal precedent. Such claims are subject to dismissal under Rule 12(b)(6). See, e.g., Arar v. Ashcroft, 532 F.3d 157, 185, 188-90 (2d Cir. 2008) (affirming dismissal of various claims under Rule 12(b)(6) where authorities cited in support of claim "are simply inapplicable" and where, even if plaintiff had the claimed right, that right was not violated "by the factual allegations stated in [plaintiff's] complaint"); Kwan v. Schlein, 2008 U.S. Dist. LEXIS 87441 (S.D.N.Y. Oct. 30, 2008), at *7 (Francis, M.J.) (dismissing fraud claim where there was "no precedent" for the claim under the circumstances presented).

### B. Judge Francis *Did Not* Disagree With Defendants "That The Record Did Not Support A Claim That Commissioner Cohen Misrepresented Intelligence Data"

The Court clearly erred in its finding that "Judge Francis disagreed with defendants' contention that the record did not support a claim that Commissioner Cohen misrepresented intelligence data concerning the security threat" (2/26/09 Order at 11). First, Judge Francis said nothing of the kind in his 1/23/08 Order. Judge Francis held only that

6

"discovery is not closed and plaintiffs are not required to prove the truth of their claims at this stage" (1/23/08 Order at 12).  Judge Francis did not cite any evidence that would support a claim that Cohen "misrepresented intelligence data concerning the security threat," nor did he suggest that such data existed.  Although Judge Francis did cite one fact from "the record" and a "Wall Street Journal" article – neither of which was *actually pled* – that he deemed "adequate to 'raise [plaintiffs'] right to relief above the speculative level,'" neither of these "facts" had anything to do with any *misrepresentation of fact* or distortions of intelligence data, plausible or otherwise.  Thus, Judge Francis identified *no basis* for a "misrepresentation" claim.  Judge Francis only found, in effect, that Cohen *was in a position* to falsify intelligence data.  Judge Francis noted that "[t]he record indicates that Commissioner Cohen *initiated the RNC surveillance program*" and noted that "plaintiffs have also pointed to a Wall Street Journal interview with Commissioner Cohen in which he discusses the role of the intelligence he provided in justifying the no-summons and fingerprinting policies" (1/23/08 Order at 12).  This constitutes no support at all for these fanciful claims.

Moreover, there is no way that Judge Francis could have cited to anything in the record that would support such a claim against Commissioner Cohen because no such evidence exists in the voluminous factual record developed to date.  In particular, there is nothing in the intelligence documents that are the subject of the pending Rule 72(a) objection that undermines or contradicts Commissioner Cohen's conclusions.  There can be no good faith contention in this case that the City did not have "valid security concerns" during the RNC.  Press reports in the months leading up to the RNC revealed detailed information that certain groups were organizing for large scale protest, disorder and unlawful conduct during the Convention. In his 6/6/07 Declaration, Commissioner Cohen explained that, in planning for the 2004 RNC, the NYPD

"faced a three part co-mingled threat – terrorism, anarchist violence and unlawful civil disobedience" (Cohen 6/6/07 Dec., Appendix A, p. 25).   The record in this dispute establishes the authenticity of these co-mingled threats to the City's safety and security.   The End User Reports and the information presented in Appendix A to the 6/6/07 Cohen Declaration establish the following without contradiction:

- **The Department of Homeland Security declared the 2004 RNC a National Special Security Event.**

- **The Iyman Faris case, late 2002/early 2003, Al Qaeda operative Iyman Faris, on orders from Khalid Sheik Mohammed (mastermind behind September 11, 2001), twice examined the Brooklyn Bridge to evaluate the feasibility of destroying it.  Deterred in part by the NYPD's high visibility policing, Faris reported that the "weather is too hot," meaning security was too tight to carry out the attack.  He is serving 20 years in prison for conspiring against targets including the Brooklyn Bridge.**

- **Terrorist Bombings in International Cites, February, 2003 - shortly after Mayor Bloomberg announced that New York City would host the 2004 RNC, there were terrorist bombings in Casablanca, Morocco, Jakarta and Istanbul.**

- **The Subway Cyanide Plot, February 2003 – An arrest of a jihadist in Saudi Arabia revealed computer records of a plot to attack the New York City Subway system using hydrogen cyanide in dispersal canisters.**

- **Iranian Agent Reconnaissance: 2003-2004 – On three occasions security personnel from Iran's Mission conducted surveillance of New York City landmarks and infrastructure including bridges and the subway system leading into Manhattan.  The U.S. Government and N.Y.P.D. were concerned that they were building "off the shelf" reconnaissance of New York targets in advance of any future attacks against New York by terrorists supported by Iran, such as Hezbollah.  This would replicate Iranian action prior to the 1994 bombing of the Jewish center in Buenos Aires where 85 persons were killed.**

- **The Mohammed Babar Case, April 2004 -- four months before the 2004 RNC – an Al Qaeda operative was arrested by NYPD detectives and FBI agents in Queens, New York for his role in a plot to bomb pubs, restaurants and train stations in London.  He had been a member of a radical organization which still exists in the New York City area.**

- <u>The Citigroup/New York Stock Exchange Case</u>, July 2004 – 30 days before the 2004 RNC – the capture of Al-Qaeda operative Issa Al-Hindi in Saudi Arabia uncovered detailed reconnaissance plans, a prerequisite for attack, of the New York Stock Exchange and the Citigroup building in mid-town Manhattan.

- <u>The Herald Square Case</u>, August 2004, days before the RNC commenced, the NYPD arrested two men plotting to bomb the Herald Square subway station at 34th Street and Sixth Avenue, less than one block from the RNC site at Madison Square Garden. The operatives were subsequently convicted in Federal Court and the primary defendant who went to trial was sentenced to 30 years in prison.

- Major cities that hosted large-scale political events during a five year period preceding the 2004 RNC, from 1999 to 2003, had faced violent protests that overwhelmed law enforcement and resulted in injury, substantial property damage, civil disorder and death. These cities included Seattle, Washington in 1999; Davos, Switzerland in 2000; Quebec City, Canada in 2001; Genoa, Italy in 2001; San Francisco, California, Cancun, Mexico and Miami, Florida in 2003.

- Groups used the internet to openly discuss the use of weapons against NYPD officers that had been field tested during violent protests during large-scale political events in other major cities including Molotov cocktails and ammonium nitrate bombs strapped with nails.

Based upon this record, there can be no dispute about the authenticity and magnitude of the threats to the City's security during the 2004 RNC.[4] Nor can there be any claim that that Commissioner Cohen somehow exaggerated or distorted that threat. Moreover, these facts were made known to plaintiffs in this litigation before they asserted their baseless claims against Cohen. Plaintiffs' allegations, therefore, are made in bad faith, they are certainly insufficient to raise the right to relief beyond the speculative level and their motion to add these claims should be denied. Because the Court's Order found otherwise, it overlooked these facts and should be corrected.

---

[4] All of these facts were before Judge Francis and are before the Court as part of Defendants Rule 72(a) Objections To Judge Francis' Orders concerning NYPD Intelligence Documents.

### C. The Proposed Amended Pleadings Do Not Contain Any Facts Supporting Essential Elements Of A Section 1983 Claim, Including Facts Relating To Cohen's Personal Involvement, And Do Not Contain Facts Supporting The Specific Claim That The Magistrate Judge Approved Against Cohen

Defendants argued that plaintiffs' proposed amended pleadings do not contain any facts supporting essential elements of a Section 1983 claim against Cohen, including facts relating to Cohen's personal involvement, and do not contain facts supporting the specific claim that Judge Francis approved against Cohen. See 2/25/08 Brief at 22-23, discussing Bell Atlantic Corporation v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1965 n.3 (2007) (reversing circuit court's approval of pleading and holding that "Rule 8(a) 'contemplates the statement of circumstances, occurrences and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'"). The Supreme Court emphasized, moreover, that such "'basic deficienc[ies] should [] be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id. In short, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Id. at 1967.

Subsequent Second Circuit cases that have elaborated on these principles further support this motion. See, e.g., Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007) (interpreting Bell Atlantic to have established a "plausibility standard" for civil pleadings); Benzman v. Whitman, 523 F.3d 119, 129 (2d Cir. 2008) (reversing district court on appeal from denial of motion to dismiss on basis of qualified immunity, and dismissing senior government officer where she allegedly provided "knowingly false" information, reasoning that "bare allegation that [she] knew that her statements were false and 'knowingly' issued false press releases is not plausible in the absence of some supporting facts"). Even before Bell Atlantic, Southern District Judges

required more than the fact-free skeletal pleading of the current claims.  See Johnson v. United States, 2006 U.S. Dist. LEXIS 37601, *5 (S.D.N.Y. 2006) (Karas, J.) ("Complaints that rely on civil rights statutes are insufficient unless 'they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"); Hernandez v. United States, 1997 U.S. Dist. LEXIS 14256, *3 (S.D.N.Y. 1997) (Sweet, J.) (dismissing complaint *sua sponte* under Rule 8 where the claims were "'undifferentiated as to defendants and facts' and 'lacking in detail' as to [] any correlation between the particular defendants, their acts and the claims alleged").

Although the Court acknowledged defendants' general argument under Bell Atlantic, the Court failed to address *any* of defendants' specific arguments by which defendants identified fatal legal defects in the plaintiffs' pleadings and errors in Judge Francis' opinion.  By way of example, the Court held that "the only theory approved by Judge Francis in the January 23 Order was one which alleged that Commissioner Cohen 'formulat[ed] policy through the presentation of distorted intelligence data that 'culminated in the formulation and adoption of the no-summons and blanket fingerprinting policies'" (2/26/09 Order at 10-11) (emphasis added). Nevertheless, the Court failed to address defendants' arguments that established that such a claim was defective as a matter of law (including for reasons rightly identified by Judge Francis himself).  Indeed, Judge Francis' findings alone require a finding that plaintiffs' theory of liability against Commissioner Cohen is defective as a matter of law. [5]  How can there lie a claim

_____

[5] Judge Francis observed that "The City points out, and the plaintiffs do not dispute, that Cohen did not have final decisionmaking authority with respect to the relevant RNC policing procedures." Order at 10. "Nor has there been an allegation that he lobbied those with final decisionmaking authority to adopt the challenged procedures as a response to the information he presented." Order at 10. "The presentation of an opinion or the results of an investigation, even if it served as justification for another official's decision to act unconstitutionally, would not on Continued...

against Cohen based upon intentional tort when the Court already has found that there is not even *an allegation*, much less facts pled that support an allegation, "that he lobbied those with final decision-making authority to adopt the challenged procedures as a response to the information he presented?" The intentional tort claim against Cohen makes no sense because it seeks to hold him liable although (according to the Court) he did not seek to influence the decision-maker (Kelly) on the decision that allegedly resulted in the constitutional injury.

> **D.** **The Claim Approved By The Magistrate Judge Against Cohen – That Cohen Manipulated Information He Presented To The Relevant Policymakers – Is Legally Deficient Under Rule 8 Of The Federal Rules Because It Does Not Provide Any Notice To Cohen Of What Specific Misrepresentation He Made To, Or What Specific <u>Information He Purposely Withheld From, Any Policymaker</u>**

The Court failed to address defendants' arguments to the effect that plaintiffs failed to plead sufficient factual information under *either* Rule 8 or Rule 9(b) with respect to their claims that Cohen "manipulated" or "misrepresented" certain information to Kelly. On this point, plaintiffs' claims against Cohen are far too skeletal to survive a motion to dismiss – i.e. not supported by a shred of factual information that might constitute an "entitlement to relief" under Rule 8 or a pleading "with particularity" under Rule 9(b). There can be no doubt that Rule 9(b) applies here because at the heart of plaintiffs' pleading is a claim that Cohen *misrepresented* factual information – that he lied -- to Kelly and perhaps others. Under the federal rules, such serious allegations require pleading with particularity. Even under the Rule 8 standard, however,

---

its own subject the official who forwarded the information to individual liability." Order at 10. (2/25/08 Brief at 18-19).

this claim is plainly deficient as pleaded in light of the authorities cited above.  Nevertheless, the Court failed to address defendants' arguments addressed to these points.[6]

In the Court's 2/26/09 Order, the Court held that "Judge Francis detailed plaintiffs' allegations that 'Commissioner Cohen manipulated the information he presented to the relevant decision makers[,] . . . [and] grossly misinformed the RNC Executive Committee . . . of the security threat posed by the people and groups who were planning to protest during the RNC" (2/26/09 Order at 11 (citing 1/23/08 Order at 11)).  This conclusion is clearly erroneous for several reasons.  First, as we alerted the Court earlier, Judge Francis made only *a single* passing references to specific language from the 27 complaints at issue – and Judge Francis himself found *that* language to be insufficient.  See 2/25/08 Brief at 23-24.  Thus, the Court's holding that "Judge Francis detailed plaintiffs' allegations" is clearly erroneous.

_____

[6] In their 2/25/08 Brief at 19, defendants argued: [D]efendants have been unable to identify any complaint that actually pleads with any specificity that Cohen provided any false information to anyone, much less pleads any of the requisite particulars of such a claim, such as the content of the allegedly false statement(s) or the time, place or manner of such false statements.  Nor do the complaints plead with any specificity that Commissioner Kelly actually relied upon any such false statement in adopting any particular policy; or that any such false statement actually led to the arrest or prosecution of anyone, much less any plaintiff.  See FRCP 9(b); Devaney v. A.P. Chester, 813 F.2d 566 (2nd Cir. 1987) (affirming dismissal); Herlilhy v. The City of New York, et al., 2007 U.S. Dist. LEXIS 29231, *6-20 (E.D.N.Y. 2007) (Johnson, J.) (dismissing [fraud and Section 1983 claims for failure to plead facts with sufficient particularity]).  After three years of intensive discovery in these cases, defendants submit that if plaintiffs had uncovered any false statement by Cohen, they should have and would have pled it in these belated complaints.  See also Defendants' 4/10/08 Brief at 12 (citing Shelly v. Brandveen, 2006 U.S. Dist LEXIS 15487, *9-13 (E.D.N.Y. 2006) (Garaufis, J.) (dismissing Section 1983 complaint that alleged fraud on grounds that it was not adequately pleaded under Rule 9(b)).

### E. The Magistrate Judge's Approval Of The Claims Against Cohen On The Basis Of Arguments Of Plaintiffs' Counsel In Memoranda Of Law, Reply Memoranda, Declarations, News Articles And Other Information Outside The Pleadings – And <u>Not Pled Within The Pleadings – Is Plainly Contrary To Law</u>

Contrary to the Court's holding, and as we emphasized in our first brief on this issue, Judge Francis heavily and erroneously relied upon materials *outside of the pleadings* in reaching his conclusions with respect to the sufficiency of those pleadings. The Court has not examined or addressed these arguments, which demonstrate that Judge Francis' decision is clearly erroneous and contrary to law. See 2/25/08 Brief at 24-25 (discussing <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under [Rule] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference"); <u>Branch v. Tower Air, Inc.</u>, 1995 U.S. Dist. LEXIS 16390, *17 (S.D.N.Y. 1995) (Keenan, J.) ("memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint"); <u>Dornfeld v. Dornfeld</u>, 1995 U.S. Dist. LEXIS 7125, *8-9 (S.D.N.Y. 1995) (Keenan, J.) ("memoranda in opposition to a motion to dismiss cannot be used to cure a defective complaint"); <u>O'Brien v. National Property Analysts Partners, et al.</u>, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (Leisure, J.) ("it is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss").

### F. The Magistrate Judge's Holding That "[O]nly Some Of The Plaintiffs' Proposed Amended Complaints Contain Specific Allegations Regarding Cohen's Misrepresentation Of Intelligence Data" (Order At n.6), Which Does Not Cite Any Complaint That Actually *Does* Contain Such Allegations, Confirms Defendants' <u>Argument That Plaintiffs' Claims Are Legally Defective</u>

In the end, as we previously advised the Court, and contrary to the suggestion in the Court's 2/26/09 Order, Judge Francis *did not find* that *any one* of the 27 complaints

14

sufficiently stated a claim against Cohen (in any event, Judge Francis did not *identify* any one of those complaints that he believed to have stated a claim against Cohen). Instead, as we recounted previously, Judge Francis suggested just the opposite.[7] Like Judge Francis, the Court similarly has failed to examine the pertinent language of the complaints, has failed to discuss or to apply the pertinent legal authorities and, in the end, the Court has failed to identify any one of the 27 complaints that the Court believes to represent an adequately pleaded claim against Cohen. The Court held only that "Judge Francis did not abuse his discretion by concluding that *certain plaintiffs* had sufficiently pleaded the proposed claims against Commissioner Cohen concerning misrepresentation of intelligence information" (2/26/09 Order at 12). Given the seriousness of these allegations, and the vital public policy issues and significant liability at stake, defendants submit that they are entitled to know *which complaints* from among the 27 the Court believes to be sufficiently pleaded and why such complaints do not fail to state a claim for all of the reasons that defendants have laboriously set forth in these briefs.

---

[7] [I]n footnote 6 of the Order, the Magistrate Judge observed that "[o]nly some of the plaintiffs' proposed amended complaints contain specific allegations regarding Cohen's misrepresentation of intelligence data." The Order, however, does not cite to any complaint (as opposed to briefs and declarations) that *does* contain such "specific allegations" and defendants have searched in vain for any. Furthermore, the Order continues that "In light of the potential significance of any such misrepresentation to a finding of liability, I will condition the plaintiffs' amendment on the inclusion of allegations to this effect." Order at n.6 (emphasis added). Taken together, defendants respectfully submit that these statements confirm the defendants' argument that plaintiffs' proposed claims against Cohen were insufficient in the form proposed by them and should have been denied as a matter of law. (2/25/08 Brief at 25).

**G.      The Magistrate Judge's Decision To Approve The Claims Against Cohen On An "All Or None" Basis, Without Regard To The Actual Allegations Contained (Or Not Contained) In Particular Complaints, Was Clearly Erroneous And Contrary To Law**

In addition, the Court failed to examine defendants' argument that Judge Francis erred by approving the 27 complaints at issue here on an "all or none" basis without examining the actual allegations contained (or not contained) in particular complaints in light of the legal standards governing the sufficiency of pleadings in the federal courts. There was no legal basis for Judge Francis to have done so, he cited none, and that decision is clearly erroneous and contrary to law. See 2/25/08 Brief at 25-26 (citing Bell Atlantic Corporation v. Twombly, -- U.S. --, 127 S.Ct. 1955 (2007) (dismissing complaint for insufficiency of pleading)). The Court erroneously failed to examine this argument, which we believe states a bedrock procedural principle violated by Judge Francis' order.[8]

**H.      The Policies Of Which Plaintiffs Complain, Which Are An Essential Link In Plaintiffs' Theory Against Cohen, Are Constitutional As A Matter Of Law Under Existing Legal Precedents And, Therefore, Do Not Support Any Claim Of Liability Against Cohen**

The Court overlooked the fact that, even if it rejected all of the defendants' arguments set forth above, plaintiffs' claims against Cohen would fail as a matter of law. This is

---

[8] In light of defendants' objections, moreover, it was improper for the Judge to have approved (or "conditionally" approved) in footnote 6 a proposed claim against Cohen before it had been drafted, much less served upon defendants for their review or submitted to the Court for its review. See, e.g., Colida v. Nokia America Corporation, 2006 U.S. Dist. LEXIS 64578, *6-8 (S.D.N.Y. 2006) (Pitman, M.J.) ("In making a motion for leave to amend, plaintiffs must attach a proposed amended complaint so that the Court and the opposing party has an opportunity to understand the exact changes proposed"). In addition, it was improper for the Judge to have invited yet another round of proposed amended complaints. As defendants established in other portions of their 2/25/08 Brief, nothing in the 3-1/2 year history of these cases suggested that plaintiffs should have been granted yet another opportunity to amend their complaints, much less to do so without first having afforded defendants an opportunity to review the proposed changes.

16

so because the *policies* that plaintiffs claim to have resulted from Cohen's alleged misrepresentation(s) were themselves unquestionably *constitutional*.  As a result, the logical connection between Cohen's allegedly improper conduct, on the one hand, and the alleged violation of plaintiffs' constitutional rights on the other, is completely severed.  As a matter of law, this amounts to a failure to state a claim.  In their original brief, defendants argued:

> [T]he only policies at issue here -- the NYPD's "no-summons and blanket fingerprinting policies" (Order at 9) – are constitutional as a matter of law.  Plaintiffs' theory that it was unconstitutional for the NYPD to arrest and fingerprint them – essentially because they engaged in only "minor" violations of the law – is without legal support.

2/25/08 Brief at 26.  Although defendants provided the Court with ample legal authorities supporting this argument, the Court failed to examine either the argument or the authorities.  See 2/25/08 Brief at 26-28 (discussing Atwater v. City of Lago Vista, 532 U.S. 318 (2001); Sands v. City of New York, 2006 U.S. Dist. LEXIS 72111 (E.D.N.Y. 2006) (Cogan, J.) (citing Atwater); Genia, et al. v. New York State Troopers, et al., 2007 U.S. Dist. LEXIS 19700, *37-38 (E.D.N.Y. 2007) (Bianco, J.) (citing Atwater)).  In defendants' 4/10/08 Brief, defendants supplied additional argument and authorities in support of these points and specifically rebutted plaintiffs' arguments to the contrary (4/10/08 Brief at 11-15).  In that brief, defendants explained in detail how the extremely attenuated theory against Cohen – based upon an alleged constitutional injury far too remote from him -- fails to state a claim against him as a matter of law under existing precedent.  See Defendants' 4/10/08 Brief at 13.[9]  Then, in supplemental

---

[9] See, e.g., Martinez v. California, 444 U.S. 277, 279, 285 (1980) (affirming dismissal of Section 1983 complaint on ground that the complaint failed to state a claim for relief under federal law where the injury alleged was "too remote a consequence of the [state actor] to hold [him] responsible under the federal civil rights law" and concluding that "it is perfectly clear that not every injury in which a state official has played some part is actionable"); Taylor v. Brentwood Union Free School District, 143 F.3d 679, 686-88 (2d Cir. 1998) (reversing judgment in favor of plaintiff in Section 1983 case on grounds that defendants' act was not the cause of the plaintiff's Continued…

briefing (in the form of a letter to the Court), defendants brought to the Court's attention the recent Supreme Court case of <u>Virginia v. Moore</u>, -- U.S. --, 128 S. Ct. 1958 (2008) (reaffirming <u>Atwater</u> and holding that a warrantless custodial arrest for a minor offense was constitutional when supported by probable cause <u>even</u> where state law required issuance of a summons for such offense). That case rendered another serious blow to plaintiffs' already hobbled theory – *not* for the reasons erroneously recited by the Court in a footnote but for the reasons articulated by defendants in their letter (and discussed more fully in the qualified immunity section below).

The Court failed to consider any of these points and authorities in its 2/26/09 Order. Similarly, the Court failed to consider defendants' argument that the Second Circuit long ago had rejected any claim that fingerprinting is unconstitutional – even for "minor" offenses. <u>See</u> <u>United States v. Kelly</u>, 55 F.2d 67 (2nd Cir. 1932) ("[Fingerprinting] is no more humiliating than other means of identification that have been universally held to infringe neither constitutional nor common law rights"); <u>United States v. Amerson</u>, 483 F.3d 73 (2nd Cir. 2007) (reciting <u>Kelly</u> approvingly) (discussed at 2/25/08 Brief at 28-29). Thus, the Court overlooked the argument and authorities that the two policies at issue here, because they are *constitutional*, cannot support any claim against Cohen either logically or legally.

In the end, the Court's failure to examine and to discuss *the actual language* of the various complaints at issue here means that the Court could not have considered whether each of those complaints states a legally viable claim against Commissioner Cohen *in light of the applicable (and binding) legal authorities.* Defendants are entitled to challenge these utterly

---

injury where there existed a superseding cause; recognizing that "[t]he Supreme Court consistently has refused to impose § 1983 liability upon defendants where the causal connection between the conduct and the constitutional injury is remote rather than direct").

meritless and wholly fabricated claims on this legal basis *before* defendants are put to the tremendous burden of moving on these claims for summary judgment or, worse, defending these claims at trial.   Indeed, one of the primary reasons that the Supreme Court in <u>Bell Atlantic</u> overruled its long-standing precedent in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) was to provide relief to defendants from the onerous burdens of meritless and factually baseless pleading of precisely the kind at issue here.  <u>See</u> <u>Bell Atlantic</u>.

I.   **Even If The Claim Approved By The Magistrate Judge Were Legally Viable, Its Lack Of Precedent In The Case Law As Of 2004 (And Now) <u>Would Mean That Cohen Is Entitled To Qualified Immunity</u>**

The Court's decision that Cohen is not entitled to qualified immunity overlooked (i) controlling authority that established that the facts alleged by plaintiffs do <u>not</u> articulate a violation of a constitutional right; and (ii) even assuming the facts (as alleged) did state a violation of a constitutional right, that right was not clearly established.  <u>See</u> <u>Pearson v. Callahan</u>, -- U.S.--, 129 S. Ct. 808, 816 (2009).

(a)   **Plaintiffs' Allegation That Commissioner Cohen Misrepresented Intelligence Information That Culminated In The No Summons And Fingerprinting <u>Policies Does Not Articulate A Violation Of A Constitutional Right</u>**

In denying Commissioner Cohen qualified immunity, the "salient question" identified by the Court in its 2/26/09 Order was whether plaintiffs could show that the state of the law during the relevant period gave Commissioner Cohen fair warning that falsifying intelligence data was unlawful.  2/26/09 Order at 12-13.  However, the Court overlooked its own acknowledgement that "the *only theory* approved by Judge Francis in the January 23 [2008] Order was one which alleged that Commissioner Cohen [] 'through the presentation of distorted intelligence data [] culminated in the formulation and *adoption of the no-summons and blanket fingerprinting policies.*'" (emphasis added). 2/26/09 Order at 10-11.  Therefore, the "salient

question" is *not* whether Commissioner Cohen's alleged "misrepresent[ation]," "manipulat[ion]," or "distort[ion]" of the intelligence information was unlawful (see 2/26/09 Order at 11-13), but rather whether the *"adoption of the no-summons and blanket fingerprinting policies"* that allegedly resulted from his alleged conduct themselves resulted in violation of plaintiffs' constitutional rights.  As we have established above, the answer to that question is unequivocally no.

Specifically, the Court overlooked the well-established controlling law that plaintiffs have *no* constitutional right to a summons.  Virginia v. Moore, -- U.S.--, 128 S. Ct. 1598, 1604-07 (2008) (reaffirming Atwater and holding that a warrantless custodial arrest for a minor offense was constitutional when supported by probable cause even where state law required issuance of a summons for such offense); Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("an officer [who] has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, [] may, without violating the Fourth Amendment, arrest the offender"); Bryant v. City of New York, 404 F.3d 128, 131-139 (2d Cir. 2005) (affirming district court's grant of summary judgment in favor of defendants because plaintiffs-demonstrators had not established a constitutional right to desk appearance tickets); see also, 31 N.Y. Jur. 2d Criminal Law § 201 (1995) ("a defendant has no constitutional or statutory right to an appearance ticket").

In an attempt to distinguish Virginia v. Moore, the Court in its 2/26/09 Order stated "Plaintiffs, by contrast, have alleged, *inter alia*, that the City engaged in 'indiscriminate mass arrests without individualized determinations of probable cause' and 'use[d] mass arrests to unlawfully suppress First Amendment conduct.'" (See 2/26/09 Order at 3 n.5).  But the Court overlooked the fact that those allegations are of no consequence here because, as the Court

specifically recognized, "the *only theory* approved by Judge Francis [] was one which alleged that Commissioner Cohen 'formulat[ed] policy through the presentation of distorted intelligence data that 'culminated in the formulation and *adoption of the no-summons and blanket fingerprinting policies.*'" (emphasis added). (See 2/26/09 Order at 10-11). In other words, both Judge Francis and Your Honor recognized that plaintiffs' claim that the City engaged in "indiscriminate mass arrests" was not one of the policies alleged to have been affected by Cohen.

Moreover, the Court similarly overlooked that fingerprinting, which is standard arrest processing practice subsequent to a custodial arrest, is not a constitutional violation. See United States v. Kelly, 55 F.2d 67 (2d Cir. 1932); Itzkowitz & Sons, Inc. v. Geraghty, 139 Misc. 163 (N.Y. Co. Sup. Ct. 1931); Hoover, The Role of Identification in Law Enforcement: A Historical Adventure, 46 St John's L Rev 613 ("Fingerprinting has a vital role in identification in law enforcement and fingerprinting can well be given credit for not only bringing the guilty to justice but assuring that misidentification will not ensnare the innocent"). Because there is no constitutional right to a summons or to be free from fingerprinting, plaintiffs have alleged no constitutional violation by Cohen, and he is entitled to qualified immunity as a matter of law.

**(b)   Commissioner Cohen's Alleged Conduct Did Not Violate Any Clearly Established Constitutional Right**

As just demonstrated, because there is no constitutional right to a summons or not to be fingerprinted, it certainly was not "clearly established" that such a constitutional right existed at the time of Commissioner Cohen's alleged conduct. Pearson v. Callahan, 129 S. Ct. at 816. Thus, Commissioner Cohen is entitled to qualified immunity on this ground as well. Even accepting *arguendo* plaintiffs' allegations concerning Commissioner Cohen as true (which they are not), the Court also overlooked the fact that there is no controlling authority on point that a public official who misrepresents, manipulates, or distorts information to another public official

21

in the *formulation of policies* in and of itself violates a "clearly established" constitutional right. See Id.; Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself [] does not impair anyone's constitutional right").

The Court rejected Commissioner Cohen's entitlement to qualified immunity and agreed with Judge Francis' reasoning that plaintiffs alleged that "Commissioner Cohen manipulated the information he presented to the relevant decision makers[,] [and] grossly misinformed the RNC Executive Committee [] of the security threat posed by the people and groups who were planning to protest during the RNC[,]" such that "courts have found liability in analogous situations 'where an officer [] creates false information likely to influence a jury's decision and forwards that information to prosecutors'" (2/26/09 Order at 11). However, the Court's reliance on the cited malicious prosecution cases -- specifically Caraballo and Ricciuti -- is misplaced because the Court overlooked the fact that the "clearly established" constitutional right in those cases is to be free from a police officer providing false information to support the *criminal prosecution* of plaintiffs. (See 2/26/09 Order at 11, 13).

Here, as defendants have previously argued, plaintiffs' novel legal claim against Commissioner Cohen is far removed from the criminal prosecution of any of the plaintiffs, and therefore he "played [no] active role" for the purpose of a malicious prosecution claim as the Court suggested. (See 2/26/09 Order at 13). There simply is no clearly established right to be free from internal police department officials sharing information (alleged to be manipulated) that results in the formulation of policies. This fact is demonstrated by the fact that neither the Court nor plaintiffs cite to any authority for that proposition. The Court overlooked that an official in Commissioner Cohen's position could not have been on notice of plaintiffs' *novel cause of action* -- not, as suggested by the Court, that such an official could be on notice of a

22

constitutional violation in novel *factual circumstances*.   (See 2/26/09 Order at 12).   As such, one cannot construe the claim against Commissioner Cohen as "clearly established" – or as a malicious prosecution claim.

If plaintiffs in these RNC cases were able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by *alleging* violations of extremely abstract rights, plaintiffs would transform a guarantee of qualified immunity into a rule of pleading -- thus, destroying the balance between the vindication of individuals' constitutional rights and public officials' effective performance of their duties.   Anderson v. Creighton, 483 U.S. 635, 638-39 (1987).   Accordingly, Commissioner Cohen is entitled to qualified immunity because plaintiffs have failed to allege a violation of a clearly established constitutional right. Anderson, 483 U.S. at 640 (qualified immunity is applicable unless the alleged conduct violated a clearly established constitutional right).

**(c)      Commissioner Cohen Is Entitled To
          Qualified Immunity At The Pleading Stage**

A ruling on qualified immunity should be made *early* in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.[10]   That is because qualified immunity is "an *immunity from suit* rather than the mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).   In other words, the doctrine is "an entitlement not to stand

---

[10]   According to the Supreme Court, even pretrial matters such as discovery should not be allowed until the issue of qualified immunity is resolved.   Pearson, 129 S. Ct. at 815 ("we have made clear that the 'driving force' behind the creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials [will] be resolved *prior* to discovery.'" (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (unless a plaintiff's allegations state a claim of violation of a clearly established constitutional right, qualified immunity entitles a defendant to dismissal *prior* to the commencement of discovery); Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1982) (same).

trial or face the other burdens of litigation." <u>Saucier</u>, 533 U.S. at 200.   Accordingly, it is imperative that "qualified immunity questions be resolved at the earliest possible stage of litigation" in order to satisfy the goal of the doctrine. <u>Id.</u> at 201.

Here, in denying Commissioner Cohen qualified immunity, the Court applied the more stringent standard and reasoned that at the initial stages of pleadings, "[T]he motion may be granted only where it appears beyond doubt that the plaintiff can prove *'no set of facts'* in support of his claim would entitle him to relief." (emphasis added) (<u>See</u> 2/26/09 Order at 14 <u>citing</u> <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004)).  However, the Court overlooked the fact that the "no set of facts" pleading standard was overruled by the Supreme Court in <u>Bell Atlantic</u> (plaintiff must plead "*enough* facts to state a claim to relief that is  plausible on its face" and not simply conceivable).  That holding was re-emphasized very recently in the Supreme Court's decision in <u>Pacific Bell Telephone Co. v. Linkline Communications, Inc.</u>, 2009 U.S. LEXIS 1635 at *32-33 (Feb. 25, 2009) (remanded order back to the district court to consider whether plaintiff's amended complaint states a claim upon which relief may be granted under the new pleading standard articulated in <u>Bell Atlantic</u> reasoning that the district court's application of the "no set of facts" pleading standard has been rejected as too lenient under <u>Bell Atlantic</u>).  Thus, Commissioner Cohen is entitled to qualified immunity even at the pleading stage.  <u>See</u> <u>Benzman v. Whitman</u>, 523 F3d 119, 125 (2d Cir. 2008) (reversing district court and granting qualified immunity to senior government officer at motion to dismiss stage where senior officer allegedly provided information that was "knowingly false" because the plaintiffs' complaint failed to state a claim under <u>Bell Atlantic</u>).

For all of the foregoing reasons, defendants submit that the Court should reconsider its 2/26/09 Order and deny plaintiffs permission to add the legally deficient claims

24

against Commissioner Cohen.  See In re Harris, 464 F.3d 263, 268 (2d Cir. 2006) (vacating judgment for abuse of discretion for failure to apply applicable law); Pichardo v. Ashcroft, et al., 374 F.3d 46, 55-56 (2d Cir. 2004) (vacating judgment for abuse of discretion for failure to consider applicable law).

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court reconsider its 2/26/09 Order and, upon reconsideration, modify Judge Francis' 1/23/08 Order by denying permission to plaintiffs to assert the claims against Cohen that they have pleaded in their proposed amended complaints and grant such other relief as the Court deems appropriate. Defendants respectfully request oral argument on this motion.

Dated:      March 12, 2009
            New York, New York

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendants*

By: _____

James Mirro
Raju Sundaran
Special Federal Litigation Division
100 Church Street, Room 3-130
New York, New York 10007
Tel:  212.788.8026
Fax:  212.788.9776

25